## 48084. EQUITY NATIONAL LIFE INSURANCE COMPANY v. SHELNUTT.

EVANS, Judge. On August 1, 1970, Equity National Life Ins. Co. issued a life insurance policy in the amount of $14,000 on the life of Marvin M. Shelnutt, Jr. On January 27, 1971, the insured died. The widow, Mrs. Peggy C. Shelnutt, made a demand for payment, which demand the insurer refused, after which Mrs. Shelnutt filed suit. She alleged that she had complied with the terms of the policy, and that defendant had refused to pay plaintiff the $14,000 principal amount due and that she was entitled to same, plus an additional sum as penalty and attorney fees.

Defendant answered and contended that when Marvin Shelnutt applied for the insurance policy, he executed a written application, and stated therein that as to illnesses or conditions for which he had ever consulted a physician, the answer was "none." Also, it contended that he answered certain questions in Part Two of the application in the negative, to wit, 13-a; 13-c; 14-a; 14-b. These questions were as to whether he had ever had certain illnesses, including severe headaches; high blood pressure; or shortness of breath; and whether he had consulted or been treated by any physician "not named above" within the past five years; or for any cause "not recorded above."

Defendant deposited in the register of the court what it contended were "return premiums," and moved for summary judgment, after discovery, declaring that it had no further liability in the premises. The motion was denied, and defendant appeals. *Held:*

1. As to the contentions in the defendant's answer as above set forth, first of all Shelnutt's application for insurance showed that he had consulted a doctor within the past five years, to wit: Dr. Moreland, in 1969. Thus, the insurer was not made to believe that he had consulted "none." As to defendant's contentions that Shelnutt represented he had never had certain illnesses, including "severe headaches," the application shows that he consulted Dr. Moreland for "headache," and was hospitalized for acute virus infections in 1967 and 1969.

2. The insurer's contention then is narrowed down to the question of whether it was deceived by Shelnutt as to his previous high blood pressure and shortness of breath and whether knowledge of such conditions would have caused the insurer not to issue the policy. His death, of course, precluded the possibility of his testifying as to whether these questions were actually propounded to him, and if so, under what

circumstances. So we must assume these questions were propounded. The insurer contends that the deposition of Dr. Ribis shows that he had treated Shelnutt in 1970, and that his diagnosis included a finding of high blood pressure and shortness of breath, and that this condition was not made known to its medical examiner and agent, Dr. Moreland, when Dr. Moreland examined Shelnutt on June 23, 1970. It must be remembered that the application shows Shelnutt to have been treated and hospitalized in 1967 and 1969. The record does not show that Dr. Moreland treated him each of these times, but being his family physician, a strong inference arises that he was the treating physician. It would seem exceedingly difficult for Shelnutt to deceive his own family physician about his condition. But the legal principle which controls here is that Dr. Ribis gave a medical opinion as to Shelnutt's shortness of breath and high blood pressure, which is not controlling upon any fact-finding body. *Liberty Mutual Ins. Co. v. Williams,* 44 Ga. App. 452 (1) (161 SE 853); *Ocean Accident &c. Corp. v. Lane,* 64 Ga. App. 149 (1, 2) (12 SE2d 413). A jury or other fact-finding body may disregard such testimony completely, even though uncontradicted by any other evidence in the case.

3. Next, a summary judgment cannot be obtained by a movant which rests entirely on opinion evidence (*Ginn v. Morgan,* 225 Ga. 192 (167 SE2d 393); *Life & Casualty Ins. Co. v. Moore,* 125 Ga. App. 485, 486 (188 SE2d 118)); albeit, a summary judgment may be successfully contested by use of opinion evidence. See *General Motors Corp. v. Wilson,* 120 Ga. App. 156, 157 (169 SE2d 749).

4. But to further demonstrate the weakness of the insurer's position, it attached the affidavit of an insurance underwriter, George P. Sweeney, testifying as an expert, who swore that he had read the

depositions of Dr. Moreland and Dr. Ribis, and in evaluating their testimony, finally concluded: "I further state that if he had disclosed his high blood pressure and hypertension then I *could* have made a different decision since this would have changed the nature and character of the risk in insuring Mr. Shelnutt's life." (Emphasis supplied.) This is equivocal language, he "could" have made a different decision, or he "could" have made the same decision. All ambiguities and conclusions in testimony offered by movant in summary judgment cases must be construed most favorably toward the respondent and most unfavorably toward the movant. See *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 5 (126 SE2d 442).

5. But his opinion given in this testimony was inadmissible as a mere conclusion under the following authorities, to wit: *Brown v. Mutual Life Ins. Co.*, 29 Ga. App. 794 (5, 6) (116 SE 559); *Mutual Benefit Health &c. Assn. v. Bell*, 49 Ga. App. 640 (5) (176 SE 124); *Srochi v. Kamensky*, 121 Ga. App. 518, 522 (174 SE2d 263); *Burton v. National Indemnity Co.*, 123 Ga. App. 402, 404 (181 SE2d 107). The statute itself requires the consideration *only of admissible evidence* in affidavits in support of a motion for summary judgment. See Code Ann. § 81A-156 (e) (Ga. L. 1966, pp. 609, 660; 1967, pp. 226, 238).

6. The defendant did not carry the burden imposed upon it in seeking a declaratory judgment and the trial court properly refused same.

*Judgment affirmed. Clark, J., concurs. Hall, P. J., concurs in the judgment only.*

SUBMITTED APRIL 5, 1973 — DECIDED APRIL 20, 1973.

*William Lee Preston,* for appellant.
*William R. Childers, Jr., I. Matt Thompson, II,*

for appellee.